<div align="center">

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Criminal Case No. 1:89-cr-000294-KMM-1**

</div>

UNITED STATES OF AMERICA

v.

ABELARDO MUNERA-CADAVID,
Defendant.

<div align="center">

**MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

</div>

"Extraordinary and compelling reasons" warrant the modification of Mr. Munera-Cadavid's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), in conjunction with the First Step Act (P.L. 115-391).

**I.    Introduction**

Mr. Munera-Cadavid seeks compassionate release based on the following extraordinary and compelling reasons: his current medical conditions and high risk of recurrence of cancer for which he is not receiving sufficient preventative care in prison. In addition, Mr. Munera-Cadavid's extensive and demonstrated rehabilitation over his 32 years of incarceration support a finding of extraordinary

1

and compelling reasons warranting release. Finally, Mr. Munera-Cadavid's release is consistent with the sentencing factors of 18 U.S.C. § 3553(a).

## II. Factual Background

Mr. Munera-Cadavid was born in Medellin, Colombia in 1961. *See* Presentence Report (hereinafter PSR) at ¶ 40.[1] He is one of ten children. *Id.* In 1974, his family moved to the United States, all of whom continue to reside in the U.S. today. *See id.* After graduating from high school, Mr. Munera-Cadavid earned an Associate's Degree in aviation maintenance technology. *See id.* at ¶¶ 48-49. He worked in the field of aviation mechanics for several years. *See id.* at ¶ 57. Mr. Munera-Cadavid then got caught up in the money offered by drug trafficking and was ultimately arrested and indicted in two drug-trafficking cases at the age of 26. *See id.* at ¶¶ 11, 33.

On July 31, 1989, in case 88-582-cr-HOEVLER (S.D. Fla. Aug. 31, 1988), Mr. Munera-Cadavid was found guilty by a jury on several drug trafficking-related charges and on October 11, 1989, he was sentenced to 262 months in prison for these offenses.[2]

In the instant case, Mr. Munera-Cadavid was charged with one count in violation of 21 U.S.C. § 963, and one count in violation of 21 U.S.C. § 846. *See* PSR

---

[1] It appears that a Presentence Report was not made for this specific case. Rather, the court at the time used the PSR completed for pending Case No. 88-582-cr-HOEVELER (reported completed Sept. 18, 1989, revised Oct. 13, 1989).

[2] Mr. Munera-Cadavid was convicted of Count 1, a violation of 21 U.S.C. § 963; Count 2, a violation of 21 U.S.C. §§ 952(a) and 960(a)(1)(b); and Count 3, a violation of 21 U.S.C. § 846, and Count 4, a violation of 21 U.S.C. § 841(a)(1). All charges stemmed from a conspiracy to import and deliver cocaine. *See* PSR at ¶ 3.

at ¶ 33. These charges stemmed from a conspiracy to import approximately 481 kilograms of cocaine into the United States. *Id.*

After being found guilty after a jury trial, Mr. Munera-Cadavid was sentenced on November 1, 1989 to 405 months' imprisonment to run consecutively to the 262 months imposed in the prior case. *See* Report and Recommendation, Doc. 174 (Aug. 10, 2010).

Mr. Munera-Cadavid is currently serving a combined sentence of 667 months, or 55 years and 7 months. His projected release date is September 7, 2036.[3] As of July 1, 2021, he has served approximately 386 months, or over 32 years of actual time. *See* Exhibit 1, Sentencing Monitoring Computation Data. Including good time credit, he has served a sentence of over 37 years.

Today, Mr. Munera-Cadavid is 59 years old. In June of 2019, Mr. Munera-Cadavid was diagnosed with basal cell carcinoma. *See* Exhibit 2, BOP Medical Records at 1, 13.[4] He underwent treatment for his cancer—a Mohs surgery—in September, 2019. *See id*. However, Mr. Munera-Cadavid has not had proper follow-up care to this surgery and remains at high risk of a return of this cancer.

Mr. Munera-Cadavid's medical records were reviewed by Dr. Susan Guo, a board certified radiation oncologist with extensive expertise in this type of carcinoma. *See* Exhibit 3, Expert Declaration of Dr. Susan Guo (hereinafter "Guo Decl.") at ¶¶ 4-7. Dr. Guo states that Mr. Munera-Cadavid has "a very high risk for developing more basal cell carcinoma, actinic keratoses, squamous cell carcinomas,

---

[3] https://www.bop.gov/inmateloc/ (last visited July 29, 2021).

[4] The BOP Medical Records are Bates stamped for ease of reference. Only selected pages of the medical records are included in Exhibit 2. Mr. Munera-Cadavid's complete BOP Medical Record from January 2019 to June 8, 2021 can be emailed or mailed directly to the Court and opposing counsel upon request.

in addition to melanoma." *Id.* at ¶ 9. This is particularly true because Mr. Munera-Cadavid has noticed a new similar-looking lesion in the same place, as well as additional spots on his head that are of concern. *See* Exhibit 4, Declaration of Abelardo Munera-Cadavid (hereinafter "Munera-Cadavid Decl.") at ¶¶ 6-7.

According to Dr. Guo, the American Academy of Dermatology recommends yearly follow up on skin cancers like basal cell carcinoma. Exh. 3, Guo Decl. at ¶ 11. Dr. Guo states that Mr. Munera-Cadavid "needs to be examined by a dermatologist again as soon as possible" given his risk of developing additional skin cancers. *Id.* at ¶ 12. Mr. Munera-Cadavid has received no follow-up care from a dermatologist since his original surgery, despite Mr. Munera-Cadavid's repeated requests. Exh. 4, Munera-Cadavid Decl. at ¶¶ 8, 10.

In addition, on September 18, 2020, Mr. Munera-Cadavid received a scan of his lungs. *See* Exh. 2, BOP Medical Records at 6. The scan showed that his lungs were "hyperinflated." *Id.* According to Dr. Guo, hyperinflated lungs could be an early sign of chronic obstructive pulmonary disease (COPD). Exh. 3, Guo Decl. at ¶ 13. Mr. Munera has not received any follow-up testing or care related to this finding. Exh. 4, Munera-Cadavid Decl. at ¶ 11. If left untreated, Mr. Munera-Cadavid is at a higher risk of dying should he develop severe disease in the future and he could suffer from pain and bleeding in his lungs. Exh. 3, Guo Decl. at ¶¶ 13, 15. Mr. Munera-Cadavid should be seen by a pulmonologist as soon as possible to determine the condition of his lungs. *Id.* at ¶ 14.

As Mr. Munera-Cadavid continues to age, it is likely that his conditions will worsen. *Id.* at ¶ 16. Mr. Munera-Cadavid will need medical attention to monitor for skin cancers for the rest of his life. *Id.*

Despite these challenges to his health, Mr. Munera-Cadavid has demonstrated remarkable rehabilitation during the three decades he has been incarcerated. Since the time he first entered the custody of the BOP, over 32 years

ago, Mr. Munera-Cadavid has taken advantage of every opportunity to enrich his mind. He first obtained his GED in prison in 1991, and then proceeded to continue his education by taking hundreds of hours of courses to develop his professional skills. *See* Exh. 1, Inmate Education Data Transcript. Mr. Munera-Cadavid has completed over 730 hours of computer business education, 234 hours in Microsoft Word, and multiple courses in marketing, accounting, typing, and finance. *Id.*; *see also* Exhibit 5, BOP Certificates. In addition, Mr. Munera-Cadavid has obtained over 40 different certificates and awards during his incarceration so far, including for courses for drug treatment, Anger Management Course, and several programs focused on personal growth and health. *See id*.

Mr. Munera-Cadavid has also maintained an excellent employment record. For many years, he worked as an Orderly and was in charge of maintaining various areas of the prison, including the library, chapel, computer room, phone area, and showers. *See* Exh. 1, Inmate History Work Detail. Over his many years in prison, he also worked in food service, in the Captain's detail, and as a Chaplin clerk. *See id.* From 2006-2017, Mr. Munera-Cadavid worked in maintenance, tasked with changing the air filters around the entire facility. *See id.* In 2017, after his transfer to FCI Coleman-Low due to his good behavior, he again started working as an Orderly. *Id.* He worked first as a shower orderly, before later moving to his current position as a trust fund orderly. *Id.*

During his incarceration, Mr. Munera-Cadavid has found comfort in his faith, and has been a part of the faith community in each prison in which he has lived. *See* Exhibit 6, BOP Faith Community Certificates. Over the years, three Chaplains have gotten to know Mr. Munera-Cadavid very well and write of his good conduct and high personal standards. *See* Exhibit 7, Letters from BOP Chaplains.

- "[Mr. Munera-Cadavid] has been tireless in his commitment to make amends for his past misdeeds, investing in the betterment of himself and

5

- countless others in the different institutions where he has lived, worked, and participated in various reentry and rehabilitation programs." Letter from Father Richard Zuk, FCC Coleman-Low.

- "I have never met an inmate that was more sincere than inmate Munera…. Inmate Munera was mature in dealing with other inmates and always had a positive attitude…. He was always honest and candid about his feelings and never tried to blame anyone for the predicament in which he found himself." Letter from Chaplain Harvey Simpson, FCC Coleman-Medium.

- "Mr. Abelardo Munera-Cadavid has experienced tremendous growth in his spiritual awareness and has matured significantly as a person. He has worked very hard at personal improvement and has come through it a much wiser and better person." Letter from Chaplain Edward O' Reilly, FCC Coleman-Medium.

Mr. Munera-Cadavid has given countless hours to working with the Chapel in each institution in which he has lived. At FCC Coleman Medium, he was "meticulous in maintaining a well run library" and was an "excellent example for other inmates coming in and out of the Chapel because of the manner in which he carried himself." Exh. 7, Letter from Father Simpson. At FCC Coleman Low, Mr. Munera-Cadavid helps prepare religious services and has worked at "translating countless religious services" for the Spanish-speaking inmates. Exh. 7, Letter from Father Zuk.

Finally, Mr. Munera-Cadavid has a truly exceptional disciplinary record. During the span of over 32 years of incarceration, Mr. Munera-Cadavid has not had a single disciplinary infraction. *See* Exh. 1, Inmate Discipline Data.

The BOP recognizes the person Mr. Munera-Cadavid has become. On January 8, 2020, and then again on January 19, 2021, the BOP assessed Mr. Munera-Cadavid as a "minimum risk recidivism level"—the lowest category of risk. *See* Exh. 1, Inmate Profile; Form C16-119U. He also has a low security classification level. *See* Exh. 1, Inmate Profile. Moreover, due to his good behavior, the BOP has noted that

he is to be considered for a further reduction in custody level. *See* Exh. 1, Male Custody Classification Form.

Mr. Munera-Cadavid has numerous family members and friends who are ready to support him upon his release.[5] They are willing to help Mr. Munera-Cadavid in any way they can. *See* Exhibit 8, Letters from Family. Mr. Munera-Cadavid has maintained strong family relationships despite his decades of incarceration. He has frequent visits and calls with his brother Hernan and his wife Cindy, and through letters, calls, and visits, has been a mentor and guide to his nieces, Teressa and Jessica, and his nephew Steven. *See id.*

Mr. Munera-Cadavid has served over 32 years in prison and has been sufficiently punished for his crimes. He has demonstrated through his consistent years of rehabilitation that he is ready to be a productive member of society. As written by Father Zuk: "[Mr. Munera-Cadavid's] consistent work ethic and history, unwavering positive attitude and deep faith in God, as well, as being a mentor and elder to fellow inmates, has made an enormous impact in the lives of others. Given the opportunity, I believe he will be a success, a huge asset to his community and a productive member of society." Exh. 7, Letter from Father Zuk.

### III. Mr. Munera-Cadavid has Properly Exhausted His Administrative Remedies

Before filing a motion with the Court, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request

---

[5] Mr. Munera-Cadavid currently has a detainer from the Immigration and Customs Enforcement and may be deported to his birth country of Columbia. Mr. Munera-Cadavid's family is prepared to support him whether in Columbia or in the United States. *See* Exh. 8, Letters from Family.

by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On April 26, 2021, Mr. Munera-Cadavid requested compassionate release from the BOP. *See* Exhibit 9, BOP Denial of Request. On May 10, 2021, this request was denied by the BOP. *See id.* Accordingly, per the terms of the statute, Mr. Munera-Cadavid may now bring this motion in federal court. 18 U.S.C. § 3582(c)(1)(A).

### IV. There are Extraordinary and Compelling Reasons Related to Mr. Munera-Cadavid's Health Warranting His Compassionate Release

Enacted on December 21, 2018, the First Step Act amended the compassionate release statute by giving district courts "the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner." *United States v. Young*, 458 F. Supp.3d 838, 844 (M.D. Tenn. 2020).

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a defendant's sentence if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the sentencing factors set forth in section 3553(a), to the extent they are applicable, warrant a reduction. 18 U.S.C. § 3582(c)(1)(A).

In this case, there are "extraordinary and compelling reasons" that warrant the granting of Mr. Munera-Cadavid's petition for compassionate release. Although Congress has not defined what constitutes "extraordinary and compelling," the United States Sentencing Commission has provided a policy statement that identifies four categories of circumstances that comprise "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, cmt., n.1. Recently, in *United States v. Bryant*, the

8

Eleventh Circuit held that U.S.S.G. § 1B1.13 is the "applicable policy statement" when deciding a motion under § 3852. 996 F.3d 1243, 1262 (11th Cir. 2021).

The "Medical Condition of the Defendant" is one category of circumstances that comprise "extraordinary and compelling" reasons. *See* U.S.S.G. § 1B.1.13., cmt., n.1(A)(i). For this category, a defendant must show that he is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Mr. Munera-Cadavid satisfies the definition of "Medical Condition of the Defendant." Mr. Munera-Cadavid is at high risk of suffering from cancer again and it has remained unevaluated while incarcerated. Furthermore, Mr. Munera-Cadavid may be suffering from chronic obstructive pulmonary disease but it remains undiagnosed and untreated.

### A. Mr. Munera-Cadavid's Medical Conditions are an Extraordinary and Compelling Reason Warranting Release

Mr. Munera-Cadavid's medical conditions and lack of sufficient medical treatment while incarcerated warrant the finding of extraordinary and compelling reasons warranting compassionate release.

In September 2019, Mr. Munera-Cadavid underwent treatment for basal cell carcinoma. *See* Exh. 2, BOP Medical Records, at 1, 13. However, despite the recommendation of the dermatologist who performed the surgery for this cancer, Mr. Munera-Cadavid has received no follow-up care or evaluation since. *See* Exh. 2; Exh. 4, Munera-Cadavid Decl. at ¶¶ 8, 10. This is particularly concerning due to the growth of similar cancerous-looking lesions on Mr. Munera-Cadavid's head and in the same place as his prior carcinoma. Exh. 4, Munera-Cadavid Decl. at ¶¶ 6-7.

9

Dr. Susan Guo, a radiation oncologist with extensive expertise in this type of carcinoma, states that Mr. Munera-Cadavid remain at "very high risk for developing more basal cell carcinoma, actinic keratoses, squamous cell carcinomas, in addition to melanoma." Exh. 3, Guo Decl. at ¶ 9. Mr. Munera-Cadavid "needs to be examined by a dermatologist again as soon as possible" given his risk of developing additional skin cancers. *Id.* at ¶ 12.

In addition, a scan of his lungs in September 2020 demonstrates that Mr. Munera-Cadavid lungs were "hyperinflated." Exh. 2, BOP Medical Records at 6. According to Dr. Guo, hyperinflated lungs could be an early sign of chronic obstructive pulmonary disease (COPD). Exh. 3, Guo Decl. at ¶ 13. Mr. Munera-Cadavid has not received any follow-up testing or care related to this finding. Exh. 4, Munera-Cadavid Decl. at ¶ 11. If left untreated, Mr. Munera-Cadavid is at a higher risk of dying should he develop severe disease in the future (such as COVID-19 or one of its variants) and he could suffer from pain and bleeding in his lungs. Exh. 3, Guo Decl. at ¶¶ 13, 15. Mr. Munera-Cadavid should be seen by a pulmonologist as soon as possible to determine the condition of his lungs. *Id.* at ¶ 14.

According to Dr. Guo, Mr. Munera-Cadavid will need medical attention for the rest of his life. *Id.* at ¶ 16. Moreover, as Mr. Munera-Cadavid continues to age, it is likely that his conditions will worsen. *Id.*

In sum, Mr. Munera-Cadavid is not able to provide sufficient self-care for the prevention of future cancers and the development of COPD while in custody, as these medical conditions are not adequately being evaluated and treated while he remains in custody. Considered together, Mr. Munera-Cadavid presents extraordinary and compelling reasons as defined by the category of "Medical Condition of the Defendant."

### B. Mr. Munera-Cadavid's Rehabilitation is an Extraordinary and Compelling Reason Warranting Compassionate Release

Mr. Munera-Cadavid has demonstrated remarkable rehabilitation over the 32 years he has been incarcerated. Although rehabilitation *alone* cannot justify compassionate release, U.S.S.G. § 1B1.13 cmt. n.3, rehabilitation can be one factor to be considered in tandem with other factors to justify a reduction in sentence. *See United States v. Cantu-Rivera*, 2019 WL 2578272, at *2, n.2 (S.D. Tex. June 24, 2019) ("The Court considers [Defendant's] rehabilitation in combination with the other factors to constitute, in their entirety, such extraordinary and compelling reasons.") (citing *Pepper v. United States*, 562 U.S. 476, 490-91 (2011)).[6]

A review of Mr. Munera-Cadavid's development and accomplishments during his 32 years in prison makes it plain that he is an entirely different person from the troubled young man he was at the time of sentencing. He has developed tremendously in every aspect of his life despite being faced with the likelihood of not leaving prison until the age of 74. *See supra* Section II. Mr. Munera-Cadavid's lack of any disciplinary record, along with his record of employment and efforts to further his own professional and personal development demonstrate that his 32 years in prison have truly been transformative for him.

### V. Mr. Munera-Cadavid's Release is Consistent with Applicable Sentencing Commission Policy Statements

Prior to granting a modification of sentence, the Court must also find that the modification is "consistent with applicable policy statements issued by the

---

[6] *See also United States v. Rodriguez*, 451 F. Supp.3d 392, 405 (E.D. Penn. 2020) (considering defendant's rehabilitation in conjunction with other factors); *United States v. Brown*, 411 F. Supp.3d 446, 451 (S.D. Iowa 2019) ("The Commission implies that rehabilitation may be considered with other factors.").

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement "is essentially already met if 'extraordinary and compelling reasons' exist as defined by that policy." *United States v. Ebbers*, 432 F. Supp.3d 421, 429 (S.D.N.Y. 2020). Here, there are extraordinary and compelling reasons as defined by the Sentencing Commission's policy statement. Therefore, "[t]he only remaining consideration is the policy statement's requirement that the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.* (*quoting* U.S.S.G. § 1B1.13(2)).

The determination of whether the defendant would be a danger to the safety of others is guided by the factors set forth in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). These factors include the nature and circumstances of the current offense, the history and characteristics of the defendant, and the nature of the danger that may be posed to the community upon the defendant's release. *See* 18 U.S.C. § 3142(g).

Mr. Munera-Cadavid would not be a danger to society if released. His crimes occurred over 30 years ago, and Mr. Munera-Cadavid has had a truly exceptional disciplinary record while incarcerated. *See* Exh. 1, Inmate Discipline Data. Mr. Munera-Cadavid has had zero disciplinary incidents. *See id.* As a result, the BOP has recommended that he be considered for a decrease in custody security level. *See* Exh. 1, Male Custody Classification Form.

Significantly, on January 19, 2021, the BOP deemed Mr. Munera-Cadavid a minimal recidivism risk level—the lowest level of risk[7]—indicating the BOP also considers him likely to be a productive and non-dangerous member of society once released. *See* Exh. 1.

---

[7] *See* U.S. Dept. of Justice, Office of the Attorney General, "The Attorney General's First Sept Act Section 3634 Annual Report 24 (Dec. 2020), available at https://www.bop.gov/inmates/fsa/docs/20201221_fsa_section_3634_report.pdf (listing risk levels of PATTERN assessment).

Researchers have consistently found that those who have committed crimes "age out" of crime, especially if they have had educational and vocational opportunities while incarcerated.[8] This will be the case for Mr. Munera-Cadavid. Mr. Munera-Cadavid committed his offenses when he was 26 years old. Now, at 59 years old, Mr. Munera-Cadavid has demonstrated decades of excellent work performance and education, and has consistently shown that he poses no risk of violence. If Mr. Munera-Cadavid is not deported, any lingering concern of potential risk is alleviated by his placement on supervised release. *See United States v. Marks,* 455 F.Supp.3d 17, 35 (W.D.N.Y. 2020) (finding that any risk of danger "can be further mitigated by supervised release").

Mr. Munera-Cadavid also has a strong and well-developed release plan. Throughout his incarceration, Mr. Munera-Cadavid has kept in close contact with brother, Hernan, as well as other members of his family. *See* Exh. 8, Letters from Family. Mr. Munera-Cadavid's family is prepared to support him whether in Columbia or in the United States. *See id.*

### VI. Mr. Munera-Cadavid's Immediate Release is Consistent with 18 U.S.C. § 3553(a) Sentencing Factors

If the court finds that "extraordinary and compelling reasons" justify the modification of Mr. Munera-Cadavid's sentence, the Court must also consider the sentencing factors of 18 U.S.C. § 3553(a) in determining the appropriate term of imprisonment. *See* 18 U.S.C. § 3852(c)(1)(A). These factors include Mr. Munera-

---

[8] *See id.*; *see also* David B. Wilson et al., *A Meta-Analysis of Corrections-Based Education, Vocation, and Work Programs for Adult Offenders,* J. RESEARCH IN CRIME & DELINQUENCY 37 (Nov. 1 2000), https://doi.org/10.1177/0022427800037004001 (finding in-prison vocational training and work programs linked to reduced recidivism rates of participants).

Cadavid's personal history and characteristics, the nature of his offense, and the need for the sentence to reflect the seriousness of the offense and provide just punishment. *See* 18 U.S.C. § 3553(a).

First, it is important to note that this Court would not be sentencing the same man that stood before the Court in 1989. In resentencing Mr. Munera-Cadavid, the Court may consider the man he is today, as his "post sentencing conduct sheds light on the likelihood that he will engage in future criminal conduct." *Pepper v. United States,* 562 U.S. 476, 492 (2011). As the Supreme Court stated*,* "[t]here is no question that this evidence of [the defendant's] conduct since his initial sentencing constitutes a critical part of the 'history and characteristics' of a defendant that Congress intended courts to consider." *Id.* (citing § 3553(a)). Upon a consideration of the sentencing factors of § 3553(a) today, Mr. Munera-Cadavid should be sentenced to time-served.

Mr. Munera-Cadavid is a man who has "demonstrated a reformed decision-making process." *Bellamy v. United States,* 474 F.Supp.3d 777, 782 (E.D. Va. 2020) (granting compassionate release). A review of Mr. Munera-Cadavid's personal development and accomplishments during his years in prison makes it plain that he is an entirely different person from the man he was at the time of sentencing. Mr. Munera-Cadavid has earned his GED, has taken over a thousand of hours of business-related classes, and has a consistent and impressive work history. Furthermore, as a man now committed to his faith, Mr. Munera-Cadavid's efforts of personal growth are clear to all around him.

Second, releasing Mr. Munera-Cadavid would still provide for a sentence that is just punishment and reflects the seriousness of the offense. Mr. Munera-Cadavid's 667-month sentence is significantly longer than both the national and Eleventh Circuit average sentence for murder. According to the U.S. Sentencing Commission,

in fiscal year 2018 the national average sentence for murder was 291 months and the Eleventh Circuit average was 393 months.[9]

Mr. Munera-Cadavid has served over 32 actual years in prison, including an extremely hard past year. Some courts have recognized that a consideration of "just punishment" should take into account the harsh lock-down measures all inmates have been living in for the past months. *See, e.g.*, *United States v. Frew*, 2020 WL 6440484, at *1 (N.D. Cal. Oct. 27, 2020) (including in § 3553(a) analysis the consideration that conditions of confinement have been much harsher due to pandemic); *United States v. Indarte*, 2020 WL 6060299, at *4 (W.D. Wash. Oct. 14, 2020) (stating that the lock-down measures in prisons across the country "have made confinement much more punitive").

Third, the concept of incremental punishment weighs in favor of a sentence of time-served. The concept of incremental punishment is relevant to the sentencing goals of deterrence and public safety. In brief, this principle asks whether the defendant had a prior opportunity to learn from a lengthy prison sentence. As the Second Circuit has stated:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses.

*United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001). While the Second Circuit was speaking principally of the Career Offender Guidelines, the reasoning of its statement applies here.

---

[9] U.S.S.C., *Statistical Information Packet*, *Fiscal Year 2018*, *Eleventh Circuit* 13 (2018), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf.

Prior to this sentence of over 55 years, Mr. Munera-Cadavid had no previous arrest record. *See* PSR at ¶ 31. When Mr. Munera-Cadavid was initially sentenced to these consecutive sentences, he had not had any prior opportunity to learn from the imposition of a lengthy term of imprisonment.

If Mr. Munera-Cadavid were released today, he would have served over 32 years in prison, and he will have the opportunity to prove to the Court and society that he has changed and learned from this period of imprisonment. Mr. Munera-Cadavid has demonstrably used his time in prison to work on his personal growth and obtain professional skills.

In sum, Mr. Munera-Cadavid has served over 32 years in prison, and he has used these many years to completely rehabilitate himself. Now, at age 59, Mr. Munera-Cadavid is fully prepared to reenter society and not repeat his past mistakes. Keeping Mr. Munera-Cadavid incarcerated for the remaining 15 years on his sentence until the age of 74 would be to impose a sentence "greater than necessary" to achieve the purposes of punishment. 18 U.S.C. § 3553(a).

## VII. <u>Conclusion</u>

Enacted on December 21, 2018, the First Step Act was passed "to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown,* 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The reduction of Mr. Munera-Cadavid's sentence would address both of these goals. It would acknowledge and give value to Mr. Munera-Cadavid's tremendous efforts of personal growth, and it would release an individual who is currently serving a sentence that is no longer necessary given Mr. Munera-Cadavid's rehabilitation and poor health.

Upon consideration of the extraordinary and compelling reasons presented and the sentencing factors of § 3553(a), Mr. Munera-Cadavid, through Counsel, respectfully requests that this Court grant his motion for compassionate release.

Dated: July 29, 2021           Respectfully Submitted,

<div style="margin-left:2em;">

<u>/s/ Eda Katharine Tinto</u>
E. Katharine Tinto, Esquire
California Bar No. 223654
*Admitted Pro Hac Vice*
Criminal Justice Clinic, UC Irvine School of Law
PO Box 5479
Irvine, CA 92616
(949) 824-9247
ktinto@law.uci.edu
*Counsel for Abelardo Munera-Cadavid*

Marquise Findley-Smith, Law Student,
Criminal Justice Clinic, UC Irvine School of Law

<u>/s/ Katherine Earle Yanes</u>
Katherine Earle Yanes
Florida Bar No. 0159727
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, FL 33601
(813) 229-1118
(813) 221-6750
KYanes@kmf-law.com
*Local Counsel for Abelardo Munera-Cadavid*

</div>

<div style="text-align:center">

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Criminal Case No. 1:89-cr-000294-KMM-1**

</div>

UNITED STATES OF AMERICA

v.

ABELARDO MUNERA-CADAVID,
Defendant.

<div style="text-align:center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that I electronically filed this pleading with the Clerk of Court using the CM/ECF system, which will simultaneously deliver a copy to opposing counsel:

<div style="text-align:center">

Armando Rosquete
Bell Rosquete Reyes, PLLC
Suite 1120 PH
999 Ponce De Leon Blvd.
Coral Gables, FL 33134

Office of the United States Attorney
Southern District of Florida
99 NE 4 Street
Miami, FL 33132

</div>

Date:  July 29, 2021

/s/ Katherine Earle Yanes
Katherine Earle Yanes
Florida Bar No. 0159727
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, FL 33601
(813) 229-1118
(813) 221-6750
KYanes@kmf-law.com
*Local Counsel for Abelardo Munera-Cadavid*

/s/ Eda Katharine Tinto
E. Katharine Tinto, Esquire
California Bar No. 223654
*Admitted Pro Hac Vice*
Criminal Justice Clinic, UC Irvine School of Law
PO Box 5479
Irvine, CA 92616
(949) 824-9247
Email: ktinto@law.uci.edu
*Counsel for Abelardo Munera-Cadavid*